## UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:24-cr-00117-SDN |
| | ) | |
| ERIC ERICSON, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON DEFENDANT'S MOTIONS TO SUPPRESS

Defendant Eric Ericson moves to suppress identification documents seized during a 2006 search warrant. ECF Nos. 77, 115, 116.

He moves for suppression on several grounds, including that (1) the documents relate to alleged crimes for which the statute of limitations has passed, (2) the documents were beyond the scope of the search warrant, and 3) the officer who performed the search failed to record the documents in his inventory of seized items.

I held a hearing on September 4, 2025, on Mr. Ericson's motions and heard testimony from Retired Detective Adam Stoutamyer and Detective Sergeant Joshua Haines and argument from both sides.

For the following reasons, I grant in part and deny in part the motions to suppress.

### I.        Statute of Limitations

Mr. Ericson contends that the documents cannot be admitted because they concern conduct from 1986 to 1993 and are thus outside the statute of limitations. ECF No. 77 at 1. His argument is unavailing. The October 9, 2024, Indictment alleges Mr. Ericson committed the offense of making a false statement on a passport application on or about March 24, 2023, ECF No. 3 at 1, which is well within the five-year statute of

limitations for the type of offense charged, *see* 18 U.S.C. § 3282(a). The fact that the underlying conduct about which he allegedly made false statements occurred more than five years ago is irrelevant—the unlawful conduct alleged is the false statement on the passport application, which is alleged to have occurred within the relevant limitations period.

## II.    Search Warrant

Mr. Ericson argues that several pieces of evidence seized from the search should be suppressed: A passport, a birth certificate, a death certificate, and ten other documents—what I will refer to as individual credit card-sized cards—as laid out in Government Exhibits 4 (the front of the cards) and 5 (the back of the cards). He argues these documents seized from his filing cabinets were unlawfully obtained in excess of the search warrant's scope because they were not visible in plain sight.

First, there does not appear to be any dispute that the scope of the search warrant does not specifically include documents related to identification but instead relates to, very generally, computer-related equipment to include thumb-drives and disks. Specifically, the search warrant sought: "Items relating to the display, or storage of computer pornography via computer equipment . . . . These items could include computer hard drives, a laptop computer, other memory storage devices such as zip drives, jump drives, memory cards, or other similar storage devices, and computer disks, digital video disks, or other similar storage devices." Government Exhibit 2.

"The plain view doctrine allows police to seize the object, even though it is not specified in the warrant, if two requirements are met." *United States v. Giannetta*, 909 F.2d 571, 578 (1st Cir. 1990). First, the police must have a prior justification for being

in the position to see the object in plain view. *Id.* Second, the incriminating nature of the item must be "immediately apparent" to the police officer. *Id.*

Case law has defined "immediately apparent" as probable cause to believe the item is contraband or evidence of a crime. *Id.* In general, a written document does not fall into the plain view exception if a police officer must *read* the document to understand its incriminating nature. If you have to read a document to understand it, then its incriminating nature cannot be immediately apparent.

However, this is not a bright-line rule. It would be hard to glance at a newspaper without noticing the publisher, or to glance at a book without noticing the title. For example, as the First Circuit has explained, the fact that police officers read a label on a toolbox—indicating that it contained a saw—was enough, in context, for the incriminating nature of the saw to be immediately apparent. *United States v. Robles*, 45 F.3d 1, 7 (1st Cir. 1995). In other words, there must be some sort of "tell-tale marking" that *immediately* demonstrates to the viewer that the documents are evidence of illicit activity. *United States v. Weber*, 668 F.2d 552, 565 (1st Cir. 1981).

Turning to the facts of this case, the 2006 warrant authorized a search of Mr. Ericson's residence for: "Items relating to the display, or storage of computer pornography via computer equipment . . . . These items could include computer hard drives, a laptop computer, other memory storage devices such as zip drives, jump drives, memory cards, or other similar storage devices, and computer disks, digital video disks, or other similar storage devices." Government Exhibit 2.

As I said, it is undisputed that the warrant did not on its face authorize a search of any paper documents. However, the warrant permitted the searching officers to look for computer disks, zip drives, memory cards, and other storage devices anywhere in the

house. Here, Detective Stoutamyer was lawfully present in Mr. Ericson's home pursuant to the search warrant, and the items he was searching for (including memory cards and computer discs) could have been found in a filing cabinet. In particular, as Detective Stoutamyer and Detective Sergeant Haines testified, it was reasonable to search in such places where a CD or memory card could easily be concealed. Accordingly, I find the first prong of the plain view doctrine is met.

The second prong of the plain view doctrine is whether or not the documents' incriminating nature was immediately apparent. First, I note that Detective Stoutamyer testified that, before executing the search warrant, he learned through his research that Mr. Ericson used multiple identities. Indeed, Detective Stoutamyer testified that he knew of some of the *particular names* that Mr. Ericson had used, including "John Robert Betzing" and "Harold Fedoruk."

After hearing testimony and reviewing pictures of the exhibits at issue, I find the incriminating nature of the passport was immediately apparent. Government Exhibit 8. Detective Stoutamyer saw a picture of Mr. Ericson next to a printed name that was *not* Mr. Ericson's. The layout of the passport page makes the name of the passport holder stand out, so Detective Stoutamyer could immediately see that another name—not Mr. Ericson's—appeared on a passport accompanied by Mr. Ericson's photograph. Particularly when armed with the knowledge that Mr. Ericson had used multiple identities in the past—including the particular name listed on that passport—it was immediately apparent to Detective Stoutamyer that this passport was incriminating. Indeed, it would have been nearly impossible for Detective Stoutamyer to "unread" the name that he immediately saw and registered.

To the contrary, I find the incriminating nature of the birth and death certificates was not immediately apparent, and therefore those must be suppressed. Government Exhibits 6, 6A, 7, 7A. The names on those documents are difficult to find and read—each certificate has multiple names in various places, and the names that Mr. Ericson allegedly used as aliases do not appear in a conspicuous place at the tops of the pages. One would have to thoroughly read these documents to see those names and to understand their incriminating nature. Accordingly, the birth certificate and death certificate will be suppressed.

Similarly, with respect to Government Exhibit 4, I find that the alleged aliases were immediately apparent on only some of the identification cards provided. The American Consumer Express Credit Card, the Harold Fedoruk & Associates Business Services Card, and the Courtesy Check Card all display an alias name prominently and easily legible at first glance, such that in just looking at a card while searching through the filing cabinet, those alias names would be readily apparent. The other cards provided in Exhibit 4 do not have names that are conspicuous, and indeed, take some effort to read and discern what names they show. I find that to be true of the Wyoming identification card as well. Although the picture of Mr. Ericson is large and easy to see, it takes quite a bit of searching to find the alias name on the Wyoming ID. Accordingly, those cards are suppressed, and the American Consumer Express Credit Card, the Harold Fedoruk & Associates Business Services Card, and the Courtesy Check Card are admissible. Government Exhibits 4, 5.

This case is analogous to *United States v. Garcia,* 496 F.3d 495, 510–11 (6th Cir. 2007), which related to a warrant that authorized a search for cocaine, but not for documents. The Sixth Circuit suppressed the documents seized because the agent had to read every document to decide whether any of them had evidentiary value. *Id.* at 511.

Therefore, the Sixth Circuit held that the criminal nature of the seized documents was not immediately apparent. *Id.*; *see also United States v. Andrews*, 847 F. Supp. 2d 236, 253 (D. Mass. 2012) (suppressing documents agents found tying defendant to ownership of home because they had to read the documents, the documents' incriminating nature was not readily apparent, and documents were outside the scope of the warrant searching specifically for guns and ammo). I echo what the court said in *Andrews*: "To permit those seized documents to be introduced as evidence in this case would abet the type of general searches that the Fourth Amendment prohibits and would seriously erode the vitality of its particularity clause." *Id.* at 253.

I am now going to address a few other arguments Mr. Ericson raised. To be clear, I am only going to address these in the context of the passport and the admissible ID cards, because I have already suppressed the birth and death certificates and the other ID cards on other grounds.

*First,* Mr. Ericson argues that the documents should be suppressed because they were not listed on the inventory of items seized from the search. ECF No. 77 at 2. His assertion that the inventory list of items seized during execution of the search warrant does not include the seized identity documents is undisputed. Government Exhibit 9. However, the omission of the identity documents from the inventory list is not fatal to the documents' admissibility. "[I]t is well settled that, absent prejudice, an incomplete return does not require the suppression of evidence." *United States v. Cresta*, 592 F.Supp. 889, 905 n.7 (D. Me. 1984); *see also United States v. Dauphinee*, 538 F.2d 1, 3 (1st Cir. 1976). Prejudice does not include the inculpatory nature of the piece of evidence. Here, Mr. Ericson appears to have known about the documents since the time of the search, as— according to Detective Stoutamyer—Mr. Ericson spoke to him about the identity

documents at the time of the search. Moreover, since the inception of this case, the Government has provided information about and copies of these seized items that I am not suppressing as discovery to Mr. Ericson.

*Second*, Mr. Ericson argues that the application for the search warrant, which is Government Exhibit 2, did not demonstrate probable cause to believe that a crime had been committed and that evidence of that crime would be found in the search of his house. ECF No. 115 at 1. "Probable cause to issue a search warrant exists when given all the circumstances set forth in the affidavit there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. McMullin*, 568 F.3d 1, 6 (1st Cir. 2009) (quotation modified).

First and foremost, the search warrant was signed by a "neutral and detached" magistrate. *Aguilar v. State of Texas*, 378 U.S. 108, 111 (1964). Moreover, as Detective Stoutamyer testified, his belief that Mr. Ericson had pornography in his home that he had shown to a minor was predicated on law enforcement's interview with "Child A"—as recounted in the search warrant affidavit—who described in detail the computers, DVD player, and "jump drive" Mr. Ericson had used to show her pornography in his home. Government Exhibit 2. To the extent any of the affidavit was predicated on hearsay, the Supreme Court has held that is permissible. "Probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge." *Franks v. Delaware*, 438 U.S. 154, 165 (1978). Accordingly, the affidavit was sufficient to establish probable cause to support the issuance of the search warrant.

*Third*, Mr. Ericson's argument that the search never revealed any child sexual abuse materials or other pornography is beside the point. The constitutionality of a search

turns on whether there was probable cause *before* the search, not whether the search *actually* resulted in the seizure of evidence. *See Zurcher v. Stan. Daily*, 436 U.S. 547, 558 (1978) ("Once it is established that probable cause exists to believe a federal crime has been committed a warrant may issue for the search of any property which the magistrate has probable cause to believe *may* be the place of concealment of evidence of the crime." (quotation modified)). I have already found there was probable cause for the search at the time the warrant was issued.

Finally, I have considered all of Mr. Ericson's other arguments concerning his aliases and the dismissal of previous cases; I find none of them persuasive.

For these reasons, I **GRANT** Mr. Ericson's motion to suppress the birth and death certificates and the seven ID cards and **DENY** his motion to suppress the passport and the American Consumer Express Credit Card, the Harold Fedoruk & Associates Business Services Card, and the Courtesy Check Card. ECF Nos. 77, 115, 116.

**SO ORDERED.**

Dated this 9th day of September, 2025.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**

8